The Chief Justice
delivered the opinionof the Court.
In 1798, the Hardin county court established a town at the mouth of Salt river, at the instance of Samuel Pearman, and on land claimed by him.
Ditto and Kelso, as sureties for Pearman, executed a bond for the indemnity of any person, (if there should be any such,) who might establish a title to the land paramount to that of Pearman.
Ditto, Kelso and three others were appointed trus* tees of the town, and proceeded to sell the lots. In 1808, Ditto obtained a deed from the trustees, of whom Young was one, for ten of the lots. The deed acknowledged the receipt by the trustees, of the price of the ten lots.
On the 7th of December, 1819, Young filed a bill in chancery against Ditto and Kelso, and Pearman and others, alleging that Richard Bibb, who claimed under John May, had a better title to the land’on which the town was established, than that of Pear- *188 man; that he had established the superiority of bis right by a decree; that he (Young) had purchased from him (Bibb) his right, and had also obtained a deed from Pearman of all his right to the unsold lots, arid to the purchase money due and unpaid, for lots which had been sold; that Ditto and Kelso had received for Pearman, about $400, which they had never paid over to him, and that the deed to Ditto for the ten lots, was in fact intended to be only in trust, to indemnify him asoné of Pearman’s sureties, and was made without any other consideration.
The bill, among other things, prays for a decree against Ditto and Kelso, for the money in their hands, and against Ditto for a release to Young of the title to the ten lots.
Ditto answered, and denied that he had ever received any money as Pearman’s surety, or that the conveyance of the ten lots was made to him for bis indemnity, as surety. He avers that he bought six of the ten lots, from persons who had bought them from the trustees, and paid the price for them, and that he had himself bought four of the lots from (he trustees, at about $10 each, which he had never paid. For these four lots, he professes a willingness to pay, but denies the, jurisdiction of the chancellor and relies on the lapse of time.
Kelso did not answer, and the bill was taken for confessed against him, on a publication against him for eight weeks, as a non-resident.
In an amended bill other persons were made defendants, and the allegations of the original bill were recapitulated, in a manner more precise and detailed than on the original.
In the amendment, it is alleged that Ditto and Kelso received and retained the money for which the lots were sold, in consequence of an agreement. with Pearman, that they might do so to indemnify themselves as his sureties, and several individuals are mentioned, as those from whom each of them received money in this. There being no answer to the amended bill, it was taken for confessed against Ditto, so far as its allegations bad. not been answered by the answer to the oirginal bill.
ResponsM-*7 of sureties outcTto^6' county court, on establishal and remedy to enforce it, w^and bill’inchan-eery,
On tbe final hearing, the circuit court decreed that Kelso should pay to ■ Young $ 198, and that Ditto should pay to Young $171 50, and convey to him, deed of special warranty, two of the ten lots.
To reverse this decree this writ of error is prosecuted.
As to Kelso, the decree is erroneous, because be was not before the court, even by constructive service.
And so far as Ditto is concerned, there, are several errors in the decree.
lsf. The chancellor had no jurisdiction of so much of the claim to relief, as prayed for a decree for the money. The responsibility of the sureties in the bond executed to the county court, is legal, and the ■remedy for enforcing it is purely and exclusively legai. Thereioie, Ditto’s liability as surety, could not be enforced by bill in chancery. Besides, it is not shown that Pearman’s title to the land was not the best, Nor was Ditto liable to a suit in chancery, for the money which he may have received for Pearman. If he received and failed to pay over any money, for lots which were sold by the trustees, he would be liable to Pearman for the amount due to him, in an action of assumpsit, and there is no allegation in the bill which could transfer the-jurisdiction to chancery.
If Young acquired a right in equity to this money, he might have sued for it in the name of Pearman, for his own benefit, and a court of law would have protected him in controlling such suit.
Moreover, the claim to this money was barred by time. The instant when it was received by Ditto, Pearman’s right of action to recover it, .commenced, unless it had been deposited with Ditto on trust. He denied that it was so deposited, and there is no proof to countervail his denial or establish any trust. The trust having been positively denied in the answer to the bill, it was not necessary to answer the same matter in the amended bill, and, therefore, as to this material fact, the amendment eiiher was not, or onglu not to have been taken for confessed.
Altho’ debt, does not plead statute of limitations shewyin'his8 answer, that he intended lufficünt'to’ entitle him to its protection
Crittenden, for plaintiffs; Denny, for defendant.
Ditto did not plead the statute of limitations in form, but he has shown by his answer that he relied on it. This is sufficient to entitle him to its protection.
—--
2d. The record does not justify the decree for the two lots. There is no proof that they were convey-e<^ to Ditto in trust. If they were sold, as we are to infer from the record, that they were, by the trustees, and in consequence of such sales, were conveyed to Ditto, Young has no right to them. He purchased only the unsold lots. Whether, therefore, Ditto had paid for the lots or not, cannot affect his right to them as between him and Young.
Whether Pearman might enforce an equitable lien on such of the lots as may not have been paid for by Ditto, is a question which is not before us.
Young has failed to show any right, to.convey-anee of any of the lots to him, by Ditto.
Wherefore, as to Ditto and Kelso, the decree of the circuit court is reversed, and the cause remanded, with instructions to dismiss the bill as to Ditto, and to suffer Young to, bring Kelso before the court, and there to render such decree between Kelso and Young, as shall be just and proper, according to the principles of this opinion.